**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4264
_____

BARBARA REES,

Appellant

v.

OFFICE OF CHILDREN AND YOUTH;
AMY JONES; CYNTHIA VALIMONT;
KARLEEN VOGT; JOHN/JANE DOE

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 1-09-cv-00283)
District Judge: Honorable Sean J. McLaughlin
_____

Submitted Under Third Circuit LAR 34.1(a)
December 13, 2011

Before: SLOVITER and VANASKIE, *Circuit Judges*
and STENGEL,* *District Judge*

(Filed: March 30, 2012)

*Honorable Lawrence F. Stengel, United States District Court for the Eastern District of
Pennsylvania, sitting by designation.
_____

OPINION OF THE COURT
_____

STENGEL, *District Judge*.

This is an appeal from the District Court's Order granting the motion to dismiss filed by the Appellees, Office of Children and Youth, et al. The underlying civil action arose from events involving the Appellant's unsuccessful attempts to obtain custody of her two minor grandchildren following the death of her son, who was the children's biological father. The Appellant, Barbara Rees, asserted causes of action under 42 U.S.C. § 1983 and various claims premised on Pennsylvania state law. She named as Defendants the Erie County Office of Children and Youth ("OCY") and several of its employees and/or agents. The District Court granted the Appellees' motion to dismiss after concluding that the Appellant failed to state a claim upon which relief could be granted and declined to exercise supplemental jurisdiction over Appellant's remaining state law claims. The Appellant appeals the District Court's decision on several grounds. We will affirm.[1]

Because we write primarily for the parties, we need not discuss the facts or procedural history of this case. The Appellant does not dispute the District Court's

---

[1]The District Court had jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291. The standard of review for a dismissal under FED. R. CIV. P. 12(b)(6) is *de novo*. *Phillips v. County of Allegheny*, 515 F.3d 224, 230 (3d. Cir. 2008). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all plausible inferences in favor of the plaintiff. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In assessing the merits of a motion to dismiss, courts must be careful to recognize "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal 129 S.Ct. 1937, 1949 (2009). "[O]nly a complaint that states a *plausible* claim for relief survives a motion to dismiss." Id. at 1950 (emphasis added).

thorough factual summary in its memorandum opinion.[2] Therefore, we refer the parties to the District Court's memorandum opinion for the facts on which we base our application of the law.

Rees first contends that the District Court did not follow the correct standard in reviewing her Complaint when ruling on the defendants' motion to dismiss. Appellant's Brief at 9. The District Court based its decision on the facts alleged in Rees' complaint and nearly repeated the plaintiff's alleged facts verbatim in its opinion. Rees fails to understand the difference between stating facts alleged and stating what those facts signify under controlling law. The District Court accepted Rees' facts, where well-pleaded, but was not obliged to accept her legal conclusions.

We need not address the merits of the underlying constitutional argument made by the Appellant because the case must be dismissed against the individual Defendants under the doctrine of qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (abandoning rigid two-step inquiry and permitting judges to use "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand.") The qualified immunity doctrine protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or

---

[2] Throughout her brief, the Appellant criticizes the District Court for its failure to consider the facts in the light most favorable to the plaintiff, the non-moving party. However, other than a vague reference to the District Court's "characterizations" of the facts, the Appellant's brief does not challenge the accuracy of the facts recounted by the District Court's opinion.

3

constitutional rights of which a reasonable person would have known." *Id.* at 231 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

When assessing whether a right is clearly established, the inquiry requires determining "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).  Our analysis "turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Montanez v. Thompson*, 603 F.3d 243, 251 (quoting *Pearson*, 555 U.S. at 231).  Immunity should be granted if "the law did not put the officer on notice that his conduct would be clearly unlawful." *Montanez*, 603 F.3d at 251.  The "qualified immunity analysis 'gives ample room' for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (citing *Gilles v. Davis*, 427 F.3d 197, 203 (3d Cir. 2005)).

There is no controlling law on point in the Third Circuit concerning grandparents' substantive due process rights relative to the custody and care of their non-resident grandchildren.  The District Court correctly found that the only relevant district court case in our Circuit held that grandparents do not possess such rights.  District Court Opinion at 37.

The Appellant places great reliance on precedent established by the Supreme Court in *Moore v. City of East Cleveland*, 431 U.S. 494 (1977).  However, the District Court correctly explains that *Moore* does not directly control the outcome of this case because *Moore* addresses the living arrangements of a pre-existing family unit where

4

matters of child welfare and custody were not at issue. District Court Opinion at 37. The narrow question resolved in *Moore* was the constitutionality of a city ordinance that, based on land use concerns, "intrude[d] on choices concerning family living arrangements." *Moore* , 431 U.S. at 499. Rights involving non-resident grandparents and child welfare were not an issue in the case. Even if the narrow holding in *Moore* somehow dictated the outcome of this case, the law was not clearly established such that it put the Appellees on notice that their conduct was clearly unlawful.

The District Court reasoned that certain common themes figure prominently in *Moore*'s progeny that have defined substantive due process rights of grandparents and other extended family members relative to custodial matters,

> In the cases which have been decided since *Moore*, courts addressing the purported due process rights of grandparents and other extended family members seem to place particular emphasis on several factors: *to wit*, whether the plaintiff is a custodial figure or is otherwise acting in loco parentis to the children; whether and for how long the children were residing with the plaintiff at the time of the alleged deprivation, whether the plaintiff has a biological link to the children; and whether there is a potential conflict between the rights of the plaintiff and the rights or interests of the children's natural parents. Some courts have also considered whether relevant state law would imbue the plaintiff with certain rights or expectations typically afforded to parents.

District Court Opinion at 11. The District Court's detailed analysis established that the Supreme Court, other Circuit Courts, and a district court within this circuit limited a grandparent's due process rights to situations distinct from the facts alleged by Rees in her claim and far short of the rights claimed by Rees as a non-cohabitating, non-custodial, and non-*in-loco-parentis* grandparent. Accordingly, the District Court did not err in finding that the Appellees were entitled to qualified immunity relative to Count I of

5

the complaint because the Appellees were not put on notice that their conduct was clearly unlawful.

The Appellees are protected by qualified immunity with respect to Rees' due process claim based on lack of access to the courts. Although the constitutional right of access to the Courts is well established within the Third Circuit, the Appellees did not violate clearly established law in this case. A reasonable officer in the position of the Appellees would not have known that he or she was violating Rees' clearly established rights because Rees had the right under state law to petition for custody, she had access to legal counsel, and she abandoned the kinship care process on her own volition. Appellant "provided no relevant precedent showing that her theory of liability was clearly established law within the Circuit." District Court Opinion at 38. Therefore, the District Court did not err in finding that the Defendants were entitled to qualified immunity for the procedural due process claim in Count II of the Complaint.

Moreover, we note that Defendants Amy Jones, Cyndi Valimont and Kathleen Vogt are protected by absolute immunity for their conduct in preparing for, initiating, and prosecuting dependency proceedings or proceedings to terminate the rights of Carrie Peterson. *See Ernst v. Child and Youth Services of Chester County*, 108 F.3d 486, 495 (3d Cir. 1997). Jones acted as Assistant County Solicitor, Valimont was a supervisor for OCY, and Vogt was a caseworker at OCY. Compl. at 4. Plaintiff's complaint alleged that the defendants acted to deprive the plaintiff of her right to care for and adopt the children, and instead, the defendants pursued adoption by the foster parents throughout the course of the various dependency hearings. Plaintiff alleges that the defendants

6

recommended that the Court not place the children with the plaintiff. All of the alleged actions occurred within the court proceedings which determined the placement and custody of the children. Therefore, the District Court correctly found that the individual defendants were entitled to absolute immunity.

Rees also appeals the District Court's decision to dismiss Count VIII of her complaint which asserts a *Monell* claim against OCY. The District Court correctly dismissed the *Monell* claim because Rees' complaint failed to allege a specific OCY policy or custom that was deliberately indifferent to, and violative of, plaintiff's constitutional right and failed to allege such action by an OCY policy-maker. Specifically, the Complaint fails to link the alleged offending policies or customs to anyone within OCY who had policy-making authority. The only apparent policy-maker for OCY, Marianne Daniels, is identified in two paragraphs of the complaint. The allegations are insufficient to establish misconduct on the part of Daniels such that it could be attributed to OCY as a policy or custom of deliberate indifference to constitutional rights. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009). Accordingly, Rees cannot establish a viable claim against OCY under a theory of § 1983 municipal liability.

We decide merely that even if the Appellant had alleged a deprivation of a constitutional right for purposes of Counts I and II, the Appellant's claim must fail as a matter of law because the individual Appellees are entitled to qualified and absolute immunity. Furthermore, the Appellant's *Monell* claim against the County fails because the Appellant's complaint fails to allege a specific policy or custom by an OCY policy-

7

maker.  After a careful review of each of Appellant's contentions, we affirm the District

Court.